STATE OF TENNESSEE and COUNTY OF SHELBY v.
ROBERT EWING *et al.*

TAXES. *Lien. Bank of Tennessee.* The purchase of land by the Bank
of Tennessee does not extinguish pre-existing tax liens.

FROM SHELBY.

Appeal from the Chancery Court at Memphis. W.
W. McDOWELL, Ch.

ATTORNEY-GENERAL LEA for the State.

FINLEY & PETERS for Ewing.

COOPER, J., delivered the opinion of the court.

Bill filed by the State and county of Shelby to
·collect taxes on realty bought by the Bank of Ten-
nessee on August 12, 1871, at an execution sale for a·
·debt due it. The ·chancellor was of opinion that no
taxes due the State could be collected of the property
of the Bank, whether such taxes accrued before or
since the Bank acquired the property, but that the
county might collect taxes which accrued before the
Bank bought the property, including the taxes for the
entire year of 1871, not those accruing afterwards. The
·clerk and master was, therefore, ordered to sell the
land for $833.92, the principal and interest of county
taxes assessed before August 12, 1871, unless the
amount was paid by the Bank in a given time. The
Bank by its receiver appealed.

State of Tennessee and County of Shelby v. Ewing.

It was held by this court, at an early day after the organization of the Bank of Tennessee, that the property of the Bank was exempt from taxation. The decision was put upon the ground that the Bank was a public institution created for the general benefit, and that "its lands and effects must necessarily be considered as the public property of the State": *Mayor and Aldermen of Nashville* v. *Bank of Tennessee*, 1 Swan, 269. The agencies and property of States, counties and towns are exempted by law, because if any portion of the public expenses are imposed upon them, it must in some form be collected from the citizens before it can be paid: Cooley Const. Lim. 514. . The Code, therefore, exempted from taxation "all property belonging to the State, or to any county, or to the State Bank or branches": Code, sec. 542, sub-sec. 2. In a decision made at Nashville in the spring of 1882, the exemption was held to exist as to all the property acquired by the Bank for debt or otherwise after its general assignment, and in the course of the winding up of its business. The chancellor's decree is, therefore, correct as to all taxes accruing after August 12, 1871. The doubt is as to the taxes which were assessed and a lien on the property before that date.

The principle on which the exemption of public property rests as above would clearly not apply to taxes which accrued before the subject of the tax became public property. Those taxes would be a debt of the owner of the land at the time of assessment, secured by a lien on the land. Such a lien, we held at the last term at Nashville, would not be affected by a

sale of the land under a subsequent tax levy. The purchaser who acquires the land merely for the tax. for which it was sold, under the usual tax sale, would take the title subject to all pre-existing liens for other taxes. And no form of sale for taxes can affect prior liens. The lien of the State and county for taxes assessed on the property before the purchase by the Bank would, unless there is something else in the case, continue as before.

It is argued that the purchase of the property by the Bank was virtually a purchase by the State, and that a purchase by the State extinguishes or merges all prior liens. The argument is made in a double form. It is first said that the purchase extinguishes the prior liens by virtue of the realty thereby becoming public property. It is further said that the land has been bid in from year to year in the name of the Treasurer of the State whereby a legal title was obtained, and the subsequent purchase of the owner's equity creates a merger. The fact of bidding in is probably true, although it does not appear in the record sent up. Conceding the fact to be so, the interest acquired thereby would depend upon the validity of the tax sale, probably not put in issue in this case, and would not, as we have seen, interfere with other prior valid liens. The filing of the bill in this case for the collection of prior and subsequent taxes is moreover a waiver of any such right as is necessarily involved in the present contention. And we do not see how the fact that property is acquired for public purposes can extinguish existing and valid independent liens.

But we think the position is unanswerable that if the liens are not extinguished by the purchase by the Bank, the lien of the State for pre-existing taxes exists in full force as well as the lien of the county. It is true, if the taxes bear but a small proportion to the value of land, it would be useless to subject the land to the payment of the State taxes. For it would simply change the form of the State's interest at the cost of the expenses of the operation. But if, as suggested in argument, the prior State, county and municipal taxes will absorb the entire property, the State is clearly entitled to its share or to the priority of satisfaction by virtue of its sovereignty.

In this view, if the State so elect, the decree of the chancellor will be reversed, and the cause remanded to ascertain the prior State taxes, and for further proceedings in accordance with this opinion. But whatever may be the fund recovered by the State for taxes, it will be paid to the receiver as part of the assets of the Bank of Tennessee. The costs will be paid by the receiver out of the assets of the Bank.